UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINN MALCOLM WILRIDGE, | No. C 09-2236 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| JOHN MARSHALL, warden, | |
| Respondent. | |

## INTRODUCTION

Quinn Malcolm Wilridge, a pro se prisoner, filed a petition for writ of habeas corpus challenging a 2001 robbery conviction. Now before the court for consideration is respondent's motion to dismiss the petition as untimely. For the reasons discussed below, the court finds the petition to be barred by the statute of limitations and dismisses it.

## BACKGROUND

Wilridge was convicted in Santa Clara County Superior Court of robbery and was found to have suffered six prior robbery convictions in Washington state. He was sentenced on February 1, 2002 to 30 years to life in state prison.

He appealed. His conviction was affirmed by the California Court of Appeal on December 8, 2003. The California Supreme Court denied his petition for review on March 3, 2004.

About four years later, Wilridge sought collateral review of his conviction. His petition for writ of habeas corpus in the Santa Clara County Superior Court was filed on April 13, 2008, and denied on June 30, 2008. His petition for writ of habeas corpus in the California Court of Appeal was filed on August 25, 2008, and denied on August 29, 2008. He sent a petition for review to the California Supreme Court, but it was returned unfiled because it was untimely.

Wilridge then filed this action. His federal petition for writ of habeas corpus has a signature date of April 15, 2009, came to the court in an envelope postmarked May 15, 2009, and was stamped "filed" on May 20, 2009. Because Wilridge is a prisoner proceeding pro se, he receives the benefit of the prisoner mailbox rule, which deems most documents filed when they are given to prison officials to mail to the court. See Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003). For purposes of this motion, the court will deem his petition filed on April 15, 2009, which is the earliest date it could have been sent. (Had the thirty-day difference between signature and postmark dates mattered, the court would have required further evidence on the precise date it was given to prison officials to be mailed to the court.)

**DISCUSSION**

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Here, the limitations period started upon "the expiration of the time for seeking [direct] review," 28 U.S.C. § 2244(d)(1)(A), which was June 1, 2004, 90 days after the California

Supreme Court denied review. See Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999). The presumptive deadline for Wilridge to file his federal petition therefore was June 1, 2005. He missed that by almost four years, so unless he is entitled to some tolling, his petition is untimely.

The one-year limitations period will be tolled for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Wilridge's first state habeas petition was not filed until almost three years after the limitations period had expired, and therefore has no tolling effect unless he is entitled to equitable tolling of the limitations period for the gap between the conclusion of direct appeal (in June 2004) and the beginning of state habeas activity (in April 2008).

It is possible for the one-year limitation period to be equitably tolled because § 2244(d) is a statute of limitations and not a jurisdictional bar. Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc). Two standards have been articulated for determining whether equitable tolling is appropriate. The standard that has long been used in the Ninth Circuit is that equitable tolling will not be available in most cases because extensions of time should be granted only if "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." Beeler, 128 F.3d at 1288 (citation and internal quotation marks omitted). The Supreme Court articulated the standard differently, and stated that "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (petitioner's lack of diligence in filing timely state and federal petitions precluded equitable tolling); Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace); see also Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate."). The Ninth Circuit has not settled on a single consistent

3

standard. See Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir.), cert. denied, 129 S. Ct. 397 (2008) (declining to decide whether Pace standard differs from Beeler standard).

Under either articulation of the test, the petitioner bears the burden of showing that equitable tolling is warranted in his case. See Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); Pace, 544 U.S. at 418. The petitioner also must show that the extraordinary circumstances "were the cause of his untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). Spitsyn's mention of causation is important because it shows that equitable tolling often is not susceptible to a simple yes/no kind of inquiry, but instead requires the court to determine whether equitable tolling is allowed for the circumstance and, if so, how much time should be tolled for the circumstance. An acceptable reason for some delay doesn't necessarily mean that all delay is excused under the equitable tolling doctrine.

Wilridge urges that he should receive equitable tolling because he is mentally ill. Whether mental illness warrants tolling depends on whether the petitioner's mental illness during the relevant time "constituted the kind of extraordinary circumstances beyond his control, making filing impossible, for which equitable tolling is available." Laws v. Lamarque, 351 F.3d 919, 922-23 (9th Cir. 2003). "Where a habeas petitioner's mental incompetence in fact caused him to fail to meet the AEDPA filing deadline, his delay was caused by an 'extraordinary circumstance beyond [his] control,' and the deadline should be equitably tolled." Id. at 923; see Kelly, 163 F.3d at 541. While Laws and Kelly permit equitable tolling for mental incompetence, they do not stand for the proposition that every mental illness automatically tolls the limitation period. Most mental illnesses are treatable, and with proper treatment many, if not most, sufferers are capable of managing their own affairs. See Miller v. Runyon, 77 F.3d 189, 192 (7th Cir. 1996). The court must be sensitive to the problems the mentally ill face but also must be careful not to stereotype all mentally ill -- especially those who take medication to treat their illness -- as inherently and endlessly incompetent.

Wilridge has presented evidence that he has serious mental illnesses.[1] He has been diagnosed with major depressive disorder, possibly bipolar disorder, and maybe at one time schizophrenia. He has taken medications for his mental illnesses.

The medical records for the relevant time period show that Wilridge was mentally ill, but took medications for the condition, and functioned reasonably well. On May 12, 2004, the clinician observed that Wilridge was "very articulate - coherent & relevant. . . . No evidence of internal distraction or delusions." Petitioner's Exh. S. A similar observation was made on June 25, 2004. Pet. Exh. R. On April 25, 2005, the clinician noted that Wilridge's mental status was within normal limits on all the measures, and listed as a diagnosis a major depressive disorder in partial remission. Id. at fourth page. On April 29, 2005, the clinician noted that Wilridge said he was doing well on the medications, and had no mental health concerns that day; the plan was to continue him in CCCMS, one of the lower levels of care in the prison system. Petitioner's Exh. U. On November 30, 2005, the clinician observed that the "symptoms appear adequately controlled [with] meds, stable." Petitioner's Exh. T. In early 2006, Wilridge attempted suicide with an overdose of Tylenol due to severe frustration with staff and following his placement in administrative segregation. Petitioner's Exh. V. He was in the correctional treatment center for about a week (from February 25, 2006 through March 2, 2006); on discharge, the clinician noted that he had been cooperative and participated in therapy sessions. Id. In a December 31, 2006 mental health interdisciplinary progress note, the clinician noted Wilridge's mental status as being essentially normal on almost all the measures, and the clinician planned to discontinue Paxil and Depakote and to start Prozac. Petitioner's Exh. X, first page. On January 19, 2007, the clinician noted that Wilridge was fully within normal limits on his mental status exam, and that he was stable on his current medications. Id. at second page.

One of Wilridge's documents contains information that strongly undermines his equitable

---

[1] Wilridge also states that he had six major leg surgeries. However, those were in 1996, although he was taking pain medications thereafter. See Petitioner's Exh. L, sixth page. He has not provided any evidence that the effect of any pain medications was different from the effect of the psychotropic medications on his ability to think and function.

5

tolling argument. The mental health interdisciplinary progress note for June 24, 2004, states that Wilridge reported that he was on the inmate advisory council, and wanted to reduce his medicine because he felt foggy. Petitioner's Exh. R. Although Wilridge urges that the exhibit shows he was over-medicated, the court sees it as evidence that he was functioning reasonably well because being on the inmate advisory council is a leadership position quite inconsistent with his current depiction of himself as being unable to function. Inmate advisory council members are elected by other inmates and "shall serve to advise and communicate with the warden and other staff those matters of common interest and concern to the inmate general population." 15 Cal. Code Regs. § 3230(a)(1) and (c). Wilridge offers no explanation for his ability to serve in this trusted inmate leadership position yet be unable to tend to his legal affairs.

Wilridge also argues that the systemic problems with the mental health care in California's prisons supports equitable tolling. The existence of systemic problems do not prove that the care of any particular inmate was inadequate. The records Wilridge offers that he thinks prove he is mentally ill also show that he has received treatment for mental illness and functioned reasonably well with such treatment.

Another circumstance cutting against Wilridge's mental illness as equitable tolling event is the fact that he tried to use his mental illness to his advantage at the time of trial. In discussing his ineffective assistance of counsel claim, Wilridge wrote, "My attorney's lack of professionalism surfaced when he used his position as a court appointed attorney *to undermine my original instructions* to him to whole heartily (sic) search, find and raise the many issues pertaining to my health, both physically and mentally at the time of the alleged offense." See, e.g., Habeas Petition, Exh. H. He also complained to appellate counsel about the efforts to recall the sentence based on his mental health problems. See id. at Exh. I (May 22, 2003 letter from Sacher to Wilridge). Wilridge's awareness of the value of the mental illness to excuse some conduct weighs against finding that same mental illness precluded him from understanding his legal situation or from filing his federal petition until last year. Since 2001, he has shown an awareness of the importance of his mental illness in his case.

There apparently was some delay before Wilridge obtained some of his medical records relevant to his mental health defense, as he requested the documents about his mental illness from his trial attorney in August 2004 and October 2004, and didn't receive them until about February 2005. See Habeas Petition, Exhs. J-L. Even if the fact that he did not have the documents until February 2005 provided a reason to excuse his failure to file until then, it does not explain why he waited another three years to file his first state habeas petition. His efforts to obtain those documents show a petitioner functioning at a level that was inconsistent with being gripped by a mental illness that made it impossible to file his federal petition on time.

In conclusion, Wilridge's mental illness and medications therefor do not warrant equitable tolling of the limitations period from March 2004 through April 2008. The deadline for him to file his federal petition expired almost four years before he filed it. Wilridge's petition was untimely filed and is barred by the habeas statute of limitations.

Respondent's motion for extension of time to file the motion to dismiss is GRANTED. (Docket # 6.) Respondent's motion is deemed timely, as is petitioner's opposition thereto.

## CONCLUSION

Respondent's motion to dismiss is GRANTED. (Docket # 7.) The petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1). The clerk will close the file.

IT IS SO ORDERED.

DATED: October 5, 2009

_____
SUSAN ILLSTON
United States District Judge