UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUINN WILRIDGE,<br><br>        Petitioner,<br><br>   v.<br><br>JOHN MARSHALL,<br><br>        Respondent. | Case No. 09-cv-02236-SI<br><br>**ORDER RE: EQUITABLE TOLLING** |

On February 24, 2015, the Court heard argument regarding petitioner's Rule 60(b) motion. For the reasons stated, the Court finds that petitioner is not entitled to equitable tolling of the AEDPA statute of limitations, and therefore **DENIES** his Rule 60(b) motion.

**BACKGROUND**

Wilridge was convicted of robbery in Santa Clara County Superior Court and was found to have suffered six prior robbery convictions in Washington state. He was sentenced on February 1, 2002 to 30 years to life in state prison. His conviction was affirmed by the California Court of Appeal on December 8, 2003. The California Supreme Court denied his petition for review on March 3, 2004. About four years later, Wilridge sought collateral review of his conviction. His petition for writ of habeas corpus in the Santa Clara County Superior Court was filed on April 13, 2008, and denied on June 30, 2008. His petition for writ of habeas corpus in the California Court of Appeal was filed on August 25, 2008, and denied on August 29, 2008. He sent a petition for review to the California Supreme Court, but it was returned unfiled because it was untimely.

Wilridge then filed the instant action. On October 5, 2009, the Court dismissed his petition as barred by the one-year statute of limitations for prisoners challenging non-capital state convictions. *See* 28 U.S.C. § 2244(d)(1). The Court found that the limitations period began on June 1, 2004, 90 days after the California Supreme Court denied review of his appeal, and that

Wilridge did not file his habeas petition until April 15, 2009, almost five years later. The Court also found that Wilridge had failed to demonstrate that he was entitled to equitable tolling of the limitations period based on mental impairment.[1] Following that dismissal, on January 11, 2010, the Court denied Wilridge's application for a certificate of appealability. Wilridge appealed.

On July 18, 2011, the Ninth Circuit granted Wilridge's request for a certificate of appealability, "with respect to the following issues: whether the district court erred by dismissing appellant's habeas petition as time-barred, including whether, in light of this court's holdings in *Bills v. Clark*, 628 F.3d 1092, 1099-1101 (9th Cir. 2010) and *Roberts v. Marshall,* 627 F.3d 768, 773 (9th Cir. 2010), appellant was entitled to an evidentiary hearing and/or equitable tolling on the basis of his mental impairment." *See Wilridge v. Marshall*, Case No. 09-17695, dkt. 6 (Jul. 18, 2011). The Ninth Circuit also appointed counsel.

On February 10, 2012, Wilridge moved the Ninth Circuit for limited remand to this Court to supplement the record with medical records and his prison "C file" newly obtained by his appointed counsel. Case No. 09-17695, dkt. 18. On April 9, 2012, the Ninth Circuit denied Wilridge's motion for limited remand, stating, however, that the denial was "without prejudice to a renewed motion accompanied by an indication that the district court is willing to entertain the proposed Federal Rule of Civil Procedure 60(b) motion." Case No. 09-17695, dkt. 26 (*citing Crateo v. Intermark, Inc.*, 536 F.2d 862 (9th Cir. 1976)).

---

[1] Wilridge argues that he should also be entitled to equitable tolling for his trial attorney's failure to provide him with his medical records and other documents. Docket No. 58, Pet. Brf. at 7. The record shows that on August 31, 2004 and on October 5, 2004, Wilridge requested these documents from his attorney, yet he received no response until February 3, 2005 when the documents were finally mailed to him. Habeas Petition, Exhs. J, L. For purposes of this order, the Court assumes, *arguendo*, that Wilridge is entitled to equitable tolling until February 15, 2005 on account of his attorney's unreasonable delay in providing him with documents necessary to file his habeas petition. *See gen. Maples v. Thomas*, 132 S. Ct. 912, 922-27 (2012) (attorney abandonment can be "cause" that will excuse procedural default); *Rudin v. Myles*, 766 F.3d 1161, 1167-68 (9th Cir. 2014) (abandonment found where attorney showed up for hearings but eventually stopped communicating with his client and never filed the state post-conviction petition in the 511 days before he was substituted out of the case); *Spitsyn v. Moore*, 345 F.3d 796, 800-01 (9th Cir. 2003) ("extraordinary circumstances" found where, among other things, attorney was unresponsive to petitioner's inquiries); *see also Espinoza-Matthews v. California*, 432 F.3d 1021, 1027 (9th Cir. 2005) ("it is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file.") (internal citations and quotations omitted).

1 On June 18, 2012, this Court indicated its willingness to entertain a 60(b) motion, and petitioner subsequently filed a motion for remand in the Ninth Circuit. On September 11, 2012, the Ninth Circuit granted a limited remand so that this Court could rule on the Rule 60(b) motion. Case No. 09-17695, dkt. 30.

On January 23, 2013, the Court issued an order finding that an evidentiary hearing was appropriate given the new evidence presented to the Court pertaining to Wilridge's mental capacity. Docket No. 31 at 5 ("Without the benefit of an evidentiary hearing with expert testimony to explain over 1000 pages of medical and behavioral files, the Court cannot decide whether its dismissal of Wilridge's petition for failure to qualify for equitable tolling was premature."). On February 4, 2015, the Court held an evidentiary hearing, and heard the testimony of both parties' expert witnesses. Docket No. 126. On February 9, 2015, the Court held a supplemental evidentiary hearing to hear the testimony of Wilridge's witness, Anthony Watson, an inmate at the California Men's Colony in San Luis Obispo. Docket No. 127. Petitioner's Rule 60(b) motion is now before this Court.

**LEGAL STANDARD**

**I.    Rule 60(b)**

Rule 60(b) provides for reconsideration where one or more of the following is shown: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered before the court's decision; (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief. Fed. R. Civ. P. 60(b); *School Dist. No. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). "Rule 60(b) [ ] provides a mechanism for parties to seek relief from a judgment when 'it is no longer equitable that the judgment should have prospective application,' or when there is any other reason justifying relief from judgment." *Jeff D. v. Kempthorne*, 365 F.3d 844, 851 (9th Cir.2004) (quoting Fed. R. Civ. P. 60(b)).

Relief under Rule 60(b)(6) requires a party to "show 'extraordinary circumstances,' suggesting that the party is faultless in the delay." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd.*, 507 U.S. 380, 393 (1993). Such relief "normally will not be granted unless the

moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests." *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir.1993).

## II.   Equitable Tolling

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (1) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (2) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (4) the factual predicate of the claim could have been discovered through the exercise of due diligence. *See* 28 U.S.C. § 2244(d)(1). Time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the one-year time limit. *See id.* § 2244(d)(2). However Section 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).

The one-year limitations period can be equitably tolled because § 2244(d) is not jurisdictional. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "'A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'" *Id.* at 655 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). In order to prevail, a prisoner must show that the

4

extraordinary circumstances were the proximate cause of his untimeliness. *Roberts v. Marshall*, 627 F.3d 768, 772 (9th Cir. 2010) (*citing Bryant v. Ariz. Att'y Gen.,* 499 F.3d 1056, 1061 (9th Cir.2007)); *see also Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003) (*citing Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)). This causal element makes clear that equitable tolling requires more than a binary inquiry into whether or not extraordinary circumstances existed, but rather necessitates a determination of precisely which periods of delay are reasonably attributable to the extraordinary circumstances. *See Mendoza v. Carey*, 449 F.3d 1065, 1068 (9th Cir. 2006) (*quoting Whalem/Hunt v. Early,* 233 F.3d 1146, 1148 (9th Cir.2000)) ("Equitable tolling determinations are highly fact-dependent."); *see also Thomas v. Singh*, No. 1:12-CV-02079-JLT, 2013 WL 2300944, at *5 (E.D. Cal. May 24, 2013) ("A petitioner's claim of mental illness alone is insufficient to equitably toll the limitations period.").

The Ninth Circuit has "stressed that equitable tolling is unavailable in most cases. Indeed, the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (internal citations and quotations omitted). However, it has also long recognized that a "habeas petitioner's mental incompetency…is, obviously, an extraordinary circumstance beyond the prisoner's control," sufficient to trigger equitable tolling. *Calderon v. U.S.*, 163 F.3d 530, 541 (9th Cir. 1998) *rev'd on other grounds by Woodford v. Garceau* 538 U.S. 202 (2003). To show entitlement to equitable tolling due to mental incapacity, a prisoner must demonstrate both:

> (1) [That] his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either
>
> > (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
> >
> > (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing;
>
> [and]

5

> (2) […] [D]iligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills*, 628 F.3d at 1099-100 (internal citations and quotations omitted).

## DISCUSSION

Wilridge argues he is entitled to equitable tolling due to mental incapacity. For purposes of ruling on petitioner's motion, the critical time period begins on the date the statute of limitations began to run, February 15, 2005,[2] and ends on April 13, 2008, the date petitioner would have been entitled to statutory tolling for filing his state post-conviction review petition, if the AEDPA statute of limitations had not yet expired. If petitioner was sufficiently competent to file his habeas petition for a year or more during this three year time frame, then the one year statute will have expired before his state habeas petition was filed and his petition must be dismissed as time barred. For the reasons set forth below, the Court finds that Wilridge has not demonstrated that was entitled to equitable tolling for mental illness between February 2005 and January 2007, and that his federal habeas petition was therefore untimely.

The Court notes at the outset that, during the relevant time period, Wilridge's diagnoses, symptoms, medications, treatment protocols, and the staff that administered and supervised his treatment, changed with great frequency.[3] The record therefore paints a variegated landscape, characterized by undulating severity of symptoms, and shifting (and at times inconsistent) diagnoses by different healthcare professionals. The Court is therefore indebted to the work of the

---

[2] See ftnt. 1, *supra*.

[3] At different times, Wilridge was diagnosed with bipolar disorder, major depressive disorder, bipolar depressive disorder type II, major depression, post-traumatic stress disorder, schizoaffective disorder, and impulse control disorder. Docket No. 126, 2/4/15 Transcript at 13:22-15:15. At various times, and in various combinations, petitioner was prescribed Risperdal, Depakote, Paxil, Neurontin, Trazadone, and Prozac. *Id.* at 18:08-18, 21:6-9, 22:14-20, 38:1-3. His dosage quantities were changed too many times to enumerate. During the relevant time period, Wilridge was housed at Pelican Bay prison, Folsom prison, Solano prison, Jamestown prison, and San Luis Obispo prison. Docket No. 128.

two experts in this case, who reviewed and analyzed over 1600 pages of medical, administrative and legal documents in pursuit of the answer to the question with which the Court is now presented.

### I.     Petitioner's Expert

Wilridge's expert, Dr. Pablo Stewart, reviewed the dense record in this case, and also conducted a three-hour in-person interview with petitioner in May of 2013. His report proceeds by summarizing Wilridge's medical history, and discussing, in general terms, the symptoms associated with the diagnoses Wilridge received, as well of the side effects of the drugs he was prescribed. Dr. Stewart concludes that Wilridge was unable to file his habeas petition during the statutory period for three reasons[4]: (1) the adverse side effects of a concussion he received while in custody; (2) the symptoms of the mental illnesses with which he was diagnosed; and (3) the sedating and cognitive side effects of the drugs he was prescribed. Stewart Report. at 6. Dr. Stewart's analysis makes no attempt to disaggregate the relative importance of each of these three factors.

Dr. Stewart devotes very few words to the first factor. He notes that in August of 2005 Wilridge suffered a "possible concussion" as a result of being assaulted by another inmate, *id.* at 4, and describes the potential effects of sustaining a concussion without ever concluding that Wilridge himself actually experienced any of them. *Id.* at 4, 6. Dr. Stewart did not offer any testimony on this topic at the evidentiary hearing.

As to the second factor, Dr. Stewart relies on his general medical knowledge to infer the symptoms Wilridge may have been experiencing given the diagnoses he received. However, Dr.

---

[4] At the hearing, Dr. Stewart clarified that he could conclude that Wilridge satisfied prong (1)(b) of the *Bills* test, but could not state an opinion as to whether he demonstrated an adequate level of diligence under prong (2). 2/4/15 Transcript at 33:19-34:16, 34:22-35:12.

Stewart never diagnosed Wilridge, and importantly, does not conclude that Wilridge in fact suffered from any particular mental illness. *See e.g.* 2/4/15 Transcript at 11:17-18 ("any psychiatric condition [Wilridge] *may have* been suffering") (emphasis added); *Id.* 32:15-17 ("due to whatever actual mental illness he suffered from–I don't know absolutely what he's suffering from"). Dr. Stewart also expressed no opinion as to whether petitioner ever experienced psychotic symptoms. *Id.* at 56:9-12, 57:17-20. However, Dr. Stewart did opine that he believed it was more likely that petitioner had a major depressive disorder, than schizoaffective disorder. *Id.* 38:8-15, 47:9-14, 67:24-68:5. He based this conclusion on the fact that schizoaffective disorder is a chronic ailment, while major depressive disorder is episodic in nature, which would explain why the record shows significant periods where Wilridge was described as having minimal to mild symptoms. *Id.*

Having failed to conclude that Wilridge suffered from any particular mental disease, Dr. Stewart appears to rely primarily on the third factor: that the sedative and cognitive effects of the cocktail of drugs that petitioner was prescribed made it impossible for him to prepare his petition during the statutory time frame. *See id.* at 56:9-12. ("whether or not he truly experienced a psychotic symptom I'm unable to say for sure. But he was treated for it as if he did have them. And he was subjected to the medication side effects."). While unable to disaggregate the individual side effects of each drug, Dr. Stewart concludes that the cumulative effect of petitioner's pharmaceutical regimen was sufficient to render Wilridge unable to timely file his petition. *Id.* at 46:14-21.

## II.   Respondent's Expert

Respondent's expert, Dr. Jessica Ferranti, produced a report based on her review of the record in this case; she did not personally interview petitioner. Docket No. 70, Exh. 6. Dr. Ferranti concludes that she could "find no substantial evidence that Mr. Wilridge was suffering from a

major mental disorder, disease or defect that caused serious functional impairment." Ferranti Report at 25. She suggests that the record reveals an inmate who has often been the subject of disciplinary proceedings for threats, altercations and violent behavior. She finds that "[t]hese aggressive behaviors…are most consistent with antisocial personality traits and are less consistent with major mood illness." *Id.* at 27.

Dr. Ferranti first examined petitioner's records that predate his incarceration for the present offense, and found no indication of mental illness. She points to a number of evaluations which question whether Wilridge suffered from any mental illness whatsoever. *See e.g.* Ferranti Report at 26 ("The patient does not appear to have any axis I diagnosis that would account for his anger towards his roommate. More likely the patient has antisocial traits which is supported by his extensive criminal history.") (citing Livermore Veteran Administration Diagnosis 2/14/01). She also relied on a court-ordered psychiatric evaluation from 2001, when Wilridge had claimed to have had five distinct personalities. 2/4/15 Transcript at 53:15-18. Both Drs. Stewart and Ferranti agree that the likelihood of someone suffering from such a condition is "almost nil." *Id.* at 55:4-7, 117:9-13. Dr. Ferranti agreed with the physician who saw petitioner at the time, who concluded that Wilridge was malingering, perhaps to promote the idea that he should not be held responsible for his alleged crimes. *Id.* 117:23-118:8.

Dr. Ferranti similarly found no indication of mental illness or psychosis in Wilridge's prison records spanning 2004 to 2008, and cites to numerous medical reports which note a dearth of psychotic symptoms or mental illness. Ferranti Report at 27-31. In particular, she notes that it is highly unlikely that petitioner had schizoaffective disorder given that it is a chronic ailment, and the record shows that Wilridge did not exhibit signs of psychosis even when he was not on antipsychotic medication. *Id.* at 27. As noted above, Dr. Stewart came to the same conclusion for similar reasons.

Finally, Dr. Ferranti also found no evidence in the record of any "serious side effects of

[petitioner's] medication that deleteriously affected his mental health, his cognition or his sensorium (perceptions)." [5] *Id.* at 31. She also cites numerous medical records which indicate that Wilridge was not suffering any side effects or symptoms. *See e.g id.* at 31 ("I questioned [Wilridge] on whether he even needs [his medication] – asymptomatic despite inadequate doses. I suspect he fears [general population] if not on meds.") (citing Dr. Peak Progress Note 11/07/07).

### III.  Analysis

Dr. Stewart could not say whether Wilridge suffered from any particular mental health disorder. His opinion is in large part supported by inferences of medication side-effects that Wilridge *could have* been suffering from; however, as Dr. Ferranti points out, this supposition is simply not borne out in the medical records themselves. More importantly, the record indicates that, during the relevant time period, Wilridge was performing tasks which were inconsistent with the kind of incapacity required by *Bills* ("the impairment was so severe that either (a) petitioner was unable . . . to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing").  His performance of these tasks, over a roughly two year period from February 2005 to January 2007, would suggest he possessed the requisite mental acuity to timely file a habeas petition.  A few examples, together with some excerpts of the medical records, follow.

--On March 10, 2005, petitioner filed a petition for writ of coram nobis in Santa Clara County Superior Court urging that his conviction be reversed for errors committed by his trial attorney that resulted in failure to present exculpatory evidence. AG001590 ("Such evidence could have been presented to the jury for them to determine whether petitioner had formed specific

---

[5] Dr. Ferranti does note that Wilridge reported feeling groggy in the summer of 2004; however his Risperdal dosage was lowered in response to his complaints, and resolved the issue. Ferranti Report at 31.

10

intent, which is an essential element in which to be proved in the charge of Robbery. The presentation of such evidence was/is admissible pursuant to Penal Code § 28(a).").

--In April of 2005, Wilridge's symptoms were diagnosed as being in "partial remission." 2/4/15 Transcript at 46:22-47:1.

--On May 11, 2005, petitioner filed an appeal of the denial of his coram nobis petition. AG001608-10.

--On February 14, 2006, Wilridge filed an appeal to an adverse disciplinary ruling and a complaint against a correctional officer. AG000385, 387.

--On February 25, 2006, Wilridge attempted to end his own life by overdosing on Tylenol tablets. Docket No. 23-2 at EXB000064. However, less than two weeks later, on March 7, 2006, he appealed a guilty ruling of an adverse judgment from a disciplinary hearing for refusal to double cell. His appeal was initially rejected for failure to include certain documentation; however on March 27, 2006, Wilridge was able to amend his pleadings to comply with the requirement. AG000383.

--Clinician progress notes from April 17, 2006 state that Wilridge "[r]eports spending most of his day reading and legal work. No major [mental health] symptoms to report. Denied [suicidal ideation], [homicidal ideation], [auditory or visual hallucinations]." Ferranti Report at 30.

--In July of 2006, Wilridge's symptoms were diagnosed as being in remission. *See* 2/4/15 Transcript at 47:18-25 (Dr. Stewart noting that "in remission" means that his "symptoms are resolved.").

--In a December 31, 2006 mental health interdisciplinary progress note, the clinician noted Wilridge's mental status as being essentially normal on almost all the measures, and the clinician planned to discontinue Paxil and Depakote and to start Prozac. Docket No. 10, Petitioner's Exh. X, at 1; *see also* Pet. Brf. at 4 (noting that "Wilridge began improving" after the change in his medication).

11

--On January 19, 2007, the clinician noted that Wilridge was fully within normal limits on his mental status exam, and that he was stable on his current medications. *Id.* at 2.

The record shows that Wilridge was able to file legal and administrative documents on his own behalf.[6] These documents were well written, well organized and logical, and many reflected information which must have come from Wilridge himself. His vigorous prosecution of judicial and administrative actions is inconsistent with his theory that he was gripped by a mental illness that rendered him unable to file a habeas petition. *See Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014) (Petitioner not entitled to equitable tolling for mental illness where he "repeatedly sought administrative and judicial remedies, and throughout these proceedings showed an awareness of basic legal concepts."); *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) ("hav[ing] little difficulty determining that [petitioner] [was] not entitled to equitable tolling" where he filed other motions in state and federal court during the relevant period.); *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005) ("Because [petitioner] was capable of preparing and filing state court petitions [during the relevant period], it appears that he was capable of preparing and filing a [federal habeas] petition during the [same period].").

The Court therefore concludes that Wilridge is not entitled to equitable tolling for mental

---

[6] Wilridge has introduced evidence that other inmates assisted him in drafting these documents. However, even if Wilridge received substantial assistance in preparing these filings, they are still evidence of the fact that Wilridge understood the need to timely file legal documents, and was sufficiently competent to secure legal assistance to vindicate his legal rights. The standard for equitable tolling requires the Court to determine whether petitioner's mental illness was the but-for cause of his delay, *not* whether he would have been able to file his petition without any outside assistance. *See Bills v. Clark*, 628 F.3d 1092, 1100 (9th Cir. 2010) ("[A] petitioner's mental impairment might justify equitable tolling if it interferes with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure."); *see also Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir.) (petitioner's ability to secure legal assistance and file multiple state habeas petitions defeats his claim for equitable tolling due to mental illness); *cf. id.* ("Since Yeh received assistance in translation during the relevant time period, his lack of linguistic understanding could not have made it 'impossible' for him to meet the deadline.").

illness between February 2005 and January 2007, and that the one-year statute of limitations effectively expired during that time period. The Court therefore need not decide whether he may be entitled to equitable tolling during any other time periods.

While the record is replete with mental health diagnoses, "a showing of mental illness alone will not necessarily toll the limitations period because most mental illnesses are treatable, and with proper treatment many sufferers are capable of managing their own affairs." *Biagas v. Walker*, No. C 10-2429 SBA PR, 2012 WL 1094433, at *4 (N.D. Cal. Mar. 29, 2012). Furthermore, nothing in the medical records or in Dr. Stewart's report meets the high bar of showing that any mental illness that Wilridge may have suffered from was "so severe as to be the but-for cause of his delay." *Yeh* 751 F.3d at 1078.

Finally, the Court takes seriously Dr. Stewart's conclusion that Wilridge received "exceedingly poor psychiatric treatment," and that "the poor care Mr. Wilridge received is unfortunately typical of that available in the CDCR." Stewart Report at 6. Its truth is echoed by the fact that the California prison system has recently been deemed to have provided medical and psychiatric care that falls below constitutional minima, *see Brown v. Plata*, 131 S. Ct. 1910, 1923 (2011) ("For years the medical and mental health care provided by California's prisons has fallen short of minimum constitutional requirements and has failed to meet prisoners' basic health needs. Needless suffering and death have been the well-documented result."). The Court credits Dr. Stewart's assertion that the poor quality of care Wilridge received had some deleterious effect on his physical and mental condition. Regrettable as this may be, it does not suffice to meet the legal standard for equitable tolling.

///

///

Accordingly, the Court **DENIES** petitioner's Rule 60(b) motion.

**IT IS SO ORDERED**.

Dated: April 6, 2015

_____
SUSAN ILLSTON
United States District Judge